James WILLARD, Plaintiff-Respondent,

v.

KANSAS CITY TRANSIT, INC., and Francis Wellner, Defendants-Appellants.

No. 55113.

Supreme Court of Missouri, Division No. 1.

April 12, 1971.

Arthur H. Stoup, S. W. Longan, III, Kansas City, for plaintiff-respondent.

Harold T. VanDyke, John R. Cleary, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for defendants-appellants.

HYDE, Special Commissioner.

Action for damages for personal injuries sustained when plaintiff was struck by a bus owned by defendant Kansas City Transit, Inc. and driven by defendant Francis Wellner. Plaintiff had verdict and judgment for $50,000 against both defendants. They have appealed from this judgment. We reverse and remand for error in Instruction No. 4, given at plaintiff's request.

Defendants' first contention is that the court erred in failing to sustain its motion for directed verdict at the close of all the evidence. Defendants' claim is that the evidence shows plaintiff was negligent in placing himself in a position in the street by his parked car without keeping a lookout for eastbound traffic.

Plaintiff's testimony was that while driving with his wife east on the south side of 31st Street in Kansas City he saw a friend Jesse Owens working at his car, parked at the south curb with the hood raised, so he parked his car in front of the Owens car and got out to talk to him. Owens said he then put the hood down. Plaintiff's wife stayed in the car. After talking to Owens and two other men for five to ten minutes on the sidewalk, plaintiff said he would take his wife home and be back. Plaintiff said he walked between the two cars (going behind his car) with Owens walking behind him but stopped at his left rear fender to talk to the two men on the sidewalk. Plaintiff said he was close to his car with his hand resting on the car for 25 to 30 seconds when he was struck. However, plaintiff in his deposition, taken before the trial, said he was standing by his car "no more than three or four seconds" before being struck by the bus. Plaintiff also in his deposition stated this time as "about two or three seconds." On cross-examination, he said these answers were true. Plaintiff said as he walked out from the sidewalk he looked both ways for traffic but this was "before I walked out far enough to go down the side of my car." When he got to the side of his car his

back was to eastbound traffic and he did not turn around again and look but was facing southeast talking to the two men on the sidewalk. The bus driver said the bus was going ten to fifteen miles per hour but plaintiff's witnesses said its speed was 25 to 30 and 30 to 35 miles per hour. Plaintiff's wife said plaintiff was "standing at the side of our car with his right hand on the door," the front door, talking to the two men on the sidewalk, when the bus struck him. She said "to me the bus looked like it swerved over toward our car" and got about six or eight inches from it. Plaintiff's evidence was that he was struck by the front of the bus, thrown against his car and then thrown against the door of the bus.

The bus driver's testimony was that he saw some men (he said pedestrians) between the two cars when the front end of his bus was about even with them. He said they were just standing there but about the time the front end of the bus got even with them he heard a crash and saw "the glass was broke out of the second panel of the second door." In his deposition before the trial, the bus driver said he saw "two fellows close to a car standing on the north side of the car"; that plaintiff "was standing up against this car, standing by the car"; and that he estimated they were "within a foot or six inches" from the parked car. He also said the first time he saw plaintiff was when he was almost even with him. The testimony of Owens and Young (one of the men on the sidewalk to whom plaintiff was talking) corroborated plaintiff's testimony that he stood by the rear fender of his car talking to them 25 to 30 seconds before he was struck by the bus.

Defendants claim the evidence shows plaintiff was guilty of contributory negligence as a matter of law in going into the street and standing there without keeping a lookout west for eastbound traffic. Defendants rely on Lee v. Zumbehl, Mo.Sup., 410 S.W.2d 79; Danzo v. Humfeld, Mo. Sup., 180 S.W.2d 722; Dempsey v. Horton,

337 Mo. 379, 84 S.W.2d 621; Davies v. People's Ry. Co., 159 Mo. 1, 59 S.W. 982; Russell v. Bauer-Berger Grocery Co., Mo. App., 288 S.W. 985. In determining whether the trial court should have directed a verdict for defendant the evidence must be considered from the standpoint most favorable to plaintiff, giving him the benefit of all favorable inferences arising therefrom and the defendants' evidence disregarded unless it aids plaintiff's case. Capriglione v. Southwestern Bell Telephone Co., Mo.Sup., 376 S.W.2d 205, 206, and cases cited. Lee v. Zumbehl and Danzo v. Humfeld were cases where the plaintiff therein was crossing a street. In Lee, the plaintiff saw a car coming and continued into its path without looking again. In Danzo, the plaintiff walked from behind a double-parked truck without looking before stepping in front of a truck "at a place elsewhere than at a street intersection."

In Dempsey v. Horton, on which defendant herein most strongly relies, the plaintiff went to his son's car which had broken an axle, and which had been left partly on pavement 18 to 20 feet wide. This was "on the evening of May 26, 1931, while it was still light" but the hour was not stated. Plaintiff, while waiting for his son to bring him a jack, stood on the pavement at the left rear fender looking west for about five minutes and was struck by defendant's car coming from the east. (Defendant claimed his car struck a scantling plaintiff was holding causing plaintiff to be thrown to the pavement.) Plaintiff's case was submitted under the humanitarian doctrine for failure to warn, stop or swerve. The jury's verdict was for defendant but we reversed and remanded for a new trial because of error in an instruction on burden of proof. However, we held the court properly refused an instruction authorizing recovery on primary negligence of failure to warn because plaintiff's testimony showed contributory negligence as a matter of law. The basis of this holding was "plaintiff voluntarily stood on a paved public highway, where he had rea-

son to anticipate automobile traffic, for several minutes without taking the precaution to look for the approach of that traffic * * *. This, without any particular purpose for so doing." 84 S.W.2d l. c. 626. We consider the situation herein to be different from that in Dempsey and the other cases cited. In this case, 31st Street was 52 feet wide so there was 26 feet of the south half. There was no other traffic at or near the side of the bus so it was not necessary for the bus to go as close to the two parked cars as it did and it had space to swerve toward the center of the street. (Owens said he had to climb on his car to avoid it.) The time plaintiff was at the side of his car was short. At the trial, he said 25 to 30 seconds but in his deposition he said three or four seconds and four or five seconds and on cross-examination said his deposition statement was true. All the evidence indicates plaintiff was very close to the side of his car. Our conclusion is that the issue of contributory negligence was for the jury.

■ Instruction 4 given at plaintiff's request was as follows:

"Your verdict must be for plaintiff if you believe:

First, defendant Wellner either:

failed to keep a careful lookout, *or failed to swerve,* and

Second, defendant's conduct, in any one or more of the respects submitted in paragraph First, was negligent, and

Third, as a direct result of such negligence, plaintiff sustained damage.

· Unless you believe plaintiff is not entitled to recover by reason of Instruction Number *7.*" (Emphasis ours.)

As to failure to keep a careful lookout, this submission was authorized by M.A.I. 17.02. However, failure to swerve must be submitted as provided by M.A.I. 17.04 which authorizes imposition of liability on failure to act after danger of collision is reasonably apparent. Hunter v. Norton, Mo.Sup., 412 S.W.2d 163, 166; Hecker v. Schwartz, Mo.Sup., 426 S.W.2d 22, 27; Sweatman v. McClure, Mo.App., 416 S.W. 2d 665, 666; Hawkeye-Security Ins. Co. v. Thomas Grain Fumigant Co., Mo.App., 407 S.W.2d 622. Plaintiff claims that it was not necessary to require the finding of failure to act after apparent danger because plaintiff says it is not reversible error to assume an undisputed or uncontroverted fact and omit it from an instruction. Plaintiff says there was ample uncontroverted evidence that the bus driver knew or could have known there was a reasonable likelihood of collision in time thereafter to have swerved and failed to do so. It is argued that the bus was stopped at Agnes Street, 441 feet away from where plaintiff's car was parked, when plaintiff went to the side of his car; and that the bus driver could have seen him there all the time he was driving that distance. This is based on the testimony of Young who said he saw his wife get off the bus there and that plaintiff was then by the side of his car. However, this overlooks conflicting evidence of the bus driver authorizing a finding that plaintiff was not then at the side of his car in the street but was between the two cars and had not moved beyond them when the bus was almost even with the cars of plaintiff and Owens.

It also overlooks the conflict in plaintiff's own testimony about this. While he said at the trial he stood in the street by the side of his car 25 or 30 seconds, he testified in his deposition:

"QUESTION: How long had you been standing there in that position before you came in contact with the bus?

"Your answer: 'No more than—no more than three or four seconds.'

"QUESTION: You had just walked out through the cars to that position?

"ANSWER: Right.

*   *   *   *   *   *

"QUESTION: You say you'd been there for several seconds?

"ANSWER: Well, not several seconds, about two or three seconds." At the trial, plaintiff said he gave those answers and they were true. This corroborates the bus driver's testimony that when he was almost even with the cars he saw the two men between them. Furthermore, plaintiff's wife said plaintiff came to the front door of their car with his right hand on the door, which was in conflict with the testimony of plaintiff, Owens and Young as to where he was when struck by the bus. Therefore, we must hold that the time the bus driver could have seen plaintiff was in the street by the side of his car was a controverted fact and that defendant was entitled to have the jury pass on that issue. This issue was required to be presented to the jury in the manner provided by M.A.I. 17.-04.

The judgment is reversed and the cause remanded.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.